*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

PAUL EDWARD WHITE,

        Defendant-Appellant.

FOR PUBLICATION
June 17, 2021
9:00 a.m.

No. 352999
Kent Circuit Court
LC Nos. 14-004293-FC;
          14-004922-FC;
          14-006221-FH

Before: BOONSTRA, P.J., and MARKEY and SERVITTO, JJ.

MARKEY, J.

Defendant appeals by delayed leave granted the trial court's order denying his postappeal motion for relief from judgment, MCR 6.500 *et seq.* Defendant sought to withdraw guilty pleas entered several years earlier on the basis that neither the trial court nor his attorney had advised him that he would first have to complete a sentence for a crime for which he was on parole before he would begin to serve the sentences imposed for the offenses to which he pled guilty. The trial court ruled that defendant failed to demonstrate good cause or actual prejudice for purposes of MCR 6.508 because the court was not required to advise defendant about the consequences of his parole violation on his guilty-plea sentences. The trial court, however, failed to address defendant's argument that trial counsel was ineffective because counsel did not advise defendant of the consequences of the parole violation on the sentences. We reverse and remand for further proceedings.

In 2014, defendant pleaded guilty to two counts of armed robbery, MCL 750.529, and one count of tampering with a witness, MCL 750.122(7)(b). He was subsequently sentenced as a fourth-offense habitual offender, MCL 769.12, to 30 to 90 years' imprisonment for each of the robbery convictions and 10 to 30 years' imprisonment for the witness-tampering conviction, with the latter sentence to be served consecutively to concurrent robbery sentences. At the plea hearing, the trial court had informed defendant of its discretion to order consecutive sentencing. See MCL 750.122(11). Additionally, and particularly relevant to this appeal, defendant committed the offenses while on parole for a conviction of second-degree murder, MCL 750.317, and the robbery sentences were made consecutive to the expiration of the remaining portion of the term of

-1-

imprisonment imposed on defendant for second-degree murder.[1] See MCL 768.7a(2) ("If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense."). At the plea hearing, the trial court did not advise defendant of the mandatory consecutive sentencing relative to the parole violation and completion of the murder sentence. Although defendant moved to withdraw his guilty pleas in the trial court in 2015, his argument was not premised on a claim that the court or defendant's attorney was legally obligated to advise him of the mandatory consecutive sentencing and failed to do so.[2]

---

[1] The conviction for second-degree murder and an associated conviction for felony-firearm, MCL 750.227b, were rendered by a jury in March 1997. Defendant was sentenced to a prison term of 18 to 30 years for the murder conviction and to two years' imprisonment for the felony-firearm conviction. Defendant was paroled in September 2013 and committed the two armed robberies involved in this case in April 2014.

[2] At the September 11, 2014 sentencing hearing, defendant's trial counsel reported that he and defendant had read the presentence investigation report (PSIR) and had "no additions or corrections to make to the report itself." Counsel further stated that the sentencing guidelines for defendant on the robbery convictions were 120 to 450 months or life and that "[t]here's an agreement . . . that he accept a minimum of—300 months." After a bench conference, the trial court clarified, and both parties agreed, that there was no sentencing agreement. After defendant explained how desperation led to his criminal conduct, the trial court imposed sentence:

> Sir, you pled guilty to two counts of armed robbery, being a fourth felony offender. Both of those carry a maximum penalty of life or any term of years. You also pled guilty to . . . witness bribing, which—as a fourth felony offender, which also carries a maximum penalty of life or any term of years. You're 37 years old. You have four prior felonies; five prior misdemeanors, a juvenile court record. What's of great concern to me is that you had a conviction in 1997 for second degree murder. You've been in prison for a long time. You just got out of prison and only a few months after being out on parole, you started over with another life of crime. You basically, were a one-man crime spree for a while here in Grand Rapids. There was a . . . robbery that occurred in April at the 7-Eleven, which was an armed robbery. Whether it was a toy gun or not, I can tell you the cashier didn't think that. Also, there was another in April at the Butterworth Party Store. [T]hat was, again, a situation where whether it was a toy gun or not, . . . the victims did not know that. Then, once you were in jail on these and other crimes, then you contacted a female friend, and tried to get her to bribe some of these victims to change their testimony and say that it wasn't you. Sir, based on everything I see here, and your prior record, I don't believe that you can live in free society. And I am convinced that you are a very severe danger to the people of this county and the State of Michigan. Your sentencing guidelines on the armed robberies call for a minimum sentence on each of those between 126 months and 420 months. That's

On direct appeal, this Court rejected defendant's arguments that his pleas were coerced, that defense counsel was ineffective for failing to raise that particular issue and for not seeking suppression of a letter that defendant had written to his fiancée that served as the basis for the witness-tampering charge, and that the trial court erred by not granting his request for substitute counsel. *People v White*, unpublished per curiam opinion of the Court of Appeals, issued July 21, 2016 (Docket No. 327249). As part of that appeal, defendant submitted supplemental Standard 4 briefs. Despite knowing that the trial court had imposed mandatory consecutive sentences because of the parole violation, defendant at no point in his briefs contended that he should have been informed about the mandatory consecutive sentencing at the plea hearing, that he did not know about such sentencing when entering his plea, or that he would not have pleaded guilty to the three offenses had he known about the mandatory consecutive sentencing. Our Supreme Court denied defendant's application for leave to appeal. *People v White*, 500 Mich 959 (2017).

Subsequently, defendant filed a motion seeking postappeal relief from judgment under MCR 6.500 *et seq*. Defendant argued that the trial court abused its discretion by failing to advise him at the plea proceeding about the mandatory consecutive sentencing required by the parole violation. Defendant further contended that his trial counsel was ineffective for also having failed to advise him about the mandatory consecutive sentencing, which resulted in a defective plea. Finally, defendant maintained that appellate counsel was ineffective for failing to raise an issue regarding the trial court's abuse of discretion in not informing defendant of the mandatory consecutive sentencing and for failing to raise an issue concerning trial counsel's similar act of nonfeasance.

The trial court denied the motion in a written opinion and order, concluding that it had "no obligation to advise a defendant of the consecutive nature of the sentences to be imposed." The court additionally indicated that "while a trial court errs when it misinforms a defendant as to the nature of the consecutive penalty, no error occurs when the court remains silent on the issue." The trial court determined, therefore, that defendant failed to demonstrate good cause or actual prejudice as necessary to obtain postappeal relief. The trial court did not address defendant's arguments that trial counsel was ineffective for failing to advise defendant of the mandatory consecutive sentencing and that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not informing defendant of the mandatory consecutive sentencing. In the opening paragraph of the opinion and order, the trial court had stated the following:

> The defendant's motion raises three issues, all of which rely on the premise that this Court's failure to advise the defendant of the requirement for consecutive

---

a range of 10½ years to 35 years. And . . . on the witness bribing, the range is 34 months to 134 months. Accordingly, sir, it is the sentence of this court that you be committed to the Michigan Department of Corrections to first serve, concurrent terms of 30 years to 90 years on the two armed robberies. *Those must be, by law, consecutive to your case for murder that you're on parole*. Once you get done with those, and this is at my discretion, you will then serve 10 to 30 years on the witness bribing. I am aware that I have designed this, quite frankly, sir, so that you will not be eligible for parole until you're at least 77 years old. [Emphasis added.]

sentencing as to the armed robbery charges constituted reversible error. This premise is incorrect.

Indeed, the trial court's premise that all of the issues concerned the soundness of how it advised defendant was incorrect, as the issues also included trial counsel's alleged failure to advise defendant about the mandatory consecutive sentencing.

Defendant moved for reconsideration. Defendant stated in part that "[t]his motion is based upon [the] trial court only addressing the consecutive sentencing part of the grounds raised in Mr. White's first argument and not the complete issue itself." The trial court denied the motion for reconsideration, simply indicating that defendant presented the same issues already ruled upon by the court and failed to demonstrate a palpable error by which the court and the parties had been misled.

Defendant filed a delayed application for leave to appeal in this Court, essentially raising the same issues presented in his motion for relief from judgment. This Court granted the application, "limited to the issues raised in the application." *People v White*, unpublished order of the Court of Appeals, entered June 9, 2020 (Docket No. 352999).

On appeal, defendant argues that he was not properly advised by the trial court at the plea hearing of the mandatory consecutive sentencing and that his trial and appellate attorneys were ineffective. Defendant maintains that trial counsel "never told him that he could be subject to further consecutive sentencing due to his parole violation" and that had defendant known that he would be subject to mandatory consecutive sentencing due to his parole status, he "would not have pled guilty." Defendant further argues that appellate counsel was ineffective for not raising issues regarding the trial court and trial counsel's failures to advise defendant concerning the mandatory consecutive sentencing.[3]

With respect to motions for postappeal relief, this Court reviews a trial court's decision for an abuse of discretion and its underlying findings of fact for clear error. *People v Kasben*, 324 Mich App 1, 7; 919 NW2d 463 (2018). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017). "The proper interpretation and application of a court rule is a question of law that is reviewed de novo[,]" and "[t]o the extent that this case implicates constitutional issues, they are likewise reviewed de novo." *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). Court rules are to be construed to effectuate the intent of the Michigan Supreme Court, which drafts and amends the rules. *In re Mota*, __ Mich App __, __; __ NW2d __ (2020); slip op at 5. "Clear and unambiguous language contained in a court rule must be given its plain meaning and is enforced as written." *Id*. MCR 6.508(D) provides, in pertinent part

---

[3] Defendant also contends that he is entitled to a remand before a different judge, that the PSIR contained inaccurate information, and that prior record variable 5 was improperly assessed 15 points. All of these issues exceed the scope of this Court's order granting the delayed application for leave to appeal which limited defendant's arguments to those raised in the application. Accordingly, these issues will not be considered. See MCR 7.205(E)(4).

The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

\* \* \*

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

\* \* \*

(ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand; [or]

(iii) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case[.]

\* \* \*

The court may waive the "good cause" requirement . . . if it concludes that there is a significant possibility that the defendant is innocent of the crime.

Ineffective assistance of appellate counsel, specifically, counsel's failure to raise a meritorious issue on direct appeal, can satisfy the "good cause" requirement of MCR 6.508. *People v Reed*, 449 Mich 375, 382; 535 NW2d 496 (1995).

"The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." MCR 6.302(A). At the time of defendant's plea hearing, MCR 6.302(B)(2) provided that a trial court "must advise" a defendant of "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law[.]"[4] The "understanding, voluntary, and accurate" components of MCR 6.302(A) are

---

[4] The Michigan Supreme Court recently amended MCR 6.302(B)(2): It now provides that a court must advise a defendant of

-5-

derived from the requirements of constitutional due process, which might not be entirely satisfied by complying with MCR 6.302(B) and other provisions in MCR 6.302. *People v Brown*, 492 Mich 684, 694 n 35; 822 NW2d 208 (2012). The requirement that a plea be voluntary means that a defendant must be made fully aware of the direct consequences of his or her plea. *Id.* The penalty imposed by a court is the most obvious direct consequence of a conviction. *Cole*, 491 Mich at 334. "It is, therefore, well-recognized that the defendant must be apprised of the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id.* (quotation marks and citation omitted).

In *Brown*, the defendant pleaded guilty as a second-offense habitual offender to second-degree home invasion, and he argued that the trial court had failed to advise him of the enhanced maximum sentence before the court accepted his guilty plea. *Brown*, 492 Mich at 687-688. The *Brown* Court ruled:

> MCR 6.302(B) specifically gives defendants who plead guilty of a crime the right to know beforehand the maximum possible sentence that will result from their plea. We hold that when a defendant is subject to an enhanced sentence as an habitual offender, that enhanced sentence is part of the maximum prison sentence described in MCR 6.302(B)(2). . . . To hold otherwise would allow a defendant to plead guilty without knowing the true consequences of his or her plea. It would also prevent the defendant from making an understanding plea. [*Id.* at 701-702.]

Recently, our Supreme Court in *People v Warren*, 505 Mich 196, 200; 949 NW2d 125 (2020), addressed MCR 6.302(B) and a plea entered by the defendant back in 2015:

> At issue is whether, prior to accepting a guilty or no-contest plea, the trial court, in cases in which such advice is relevant, is required to advise a defendant that the court possesses discretionary consecutive-sentencing authority and to apprise the defendant as to the potential consequences of that authority for his or her sentence. We conclude that the trial court is required to do so under MCR 6.302(B)(2). As a result, the trial court here erred when it denied defendant's motion to withdraw his plea because the court failed to apprise him of both this authority and its potential consequences. We therefore reverse the judgment of the Court of Appeals and remand to the trial court to allow defendant to either withdraw his guilty plea or to reaffirm this plea.[5]

---

the maximum possible prison sentence for the offense, including, if applicable, whether the law permits or requires consecutive sentences, and any mandatory minimum sentence required by law . . . . [ADM File No. 2019-06.]

The amendment was made effective immediately, September 16, 2020. *Id.*

[5] The *Staff Comment* to the amendment of MCR 6.302(B)(2) indicates that the amendment "makes the rule consistent with the Supreme Court's ruling in *People v Warren* . . . ." ADM File No.

In *People v Blanton*, 317 Mich App 107; 894 NW2d 613 (2016), the defendant pleaded guilty to various offenses, including felony-firearm, and he had successfully argued in favor of withdrawing the pleas on the basis that he had not been advised at the plea hearing of the consecutive sentencing stemming from the felony-firearm conviction. On the prosecution's appeal, this Court affirmed, ruling as follows:

> The plain language of MCL 750.227b . . . makes clear that when a defendant carries a firearm during the commission of a felony, he or she is subject to a mandatory two-year term of imprisonment to be served consecutively with and preceding any term of imprisonment imposed for the underlying felony. Accordingly, to comply with MCR 6.302(B), the trial court, as part of the plea colloquy in this case, should have advised defendant that by pleading guilty to felony-firearm (1) he would be sentenced to a mandatory two-year term of imprisonment, (2) this term of imprisonment would be served first, and (3) the concurrent sentences for armed robbery and assault with intent to commit great bodily harm would be served consecutively to the felony-firearm sentence. There is no dispute that the trial court failed to do so. Consequently, there was a clear defect in the plea proceeding because defendant, unaware of the full nature of the penalty for felony-firearm, could not make an understanding and voluntary plea as required by MCR 6.302. [*Id.* at 120 (quotation marks and citations omitted).]

The *Blanton* panel, recognizing the relationship between MCR 6.302(B) and due process and that constitutional due process might mandate more than that required by MCR 6.302(B), stated that "although not explicitly required by MCR 6.302(B), it is well settled that a trial court must inform the defendant of any consecutive and/or mandatory sentencing requirements." *Id.* at 119 (quotation marks and citation omitted). The Supreme Court in *Warren* acknowledged this statement in *Blanton*, noting that *Blanton* concerned mandatory consecutive sentencing and "is consistent with our ruling today that trial courts must advise defendants, when applicable, of even discretionary authority" to impose consecutive sentences. *Warren*, 505 Mich at 207 n 3.

MCR 6.302(B)(2) refers to "the offense" in the context of informing a defendant of the "maximum possible prison sentence" and of "any mandatory minimum sentence." In other words, MCR 6.302(B)(2) focuses on the minimum and maximum sentences with respect to the offense or offenses to which a defendant pleads guilty. Moreover, the caselaw discussed earlier addressed circumstances in which there was discretionary or mandatory consecutive sentencing as between sentences for crimes *to which a defendant pleaded guilty*, along with habitual enhancement of a sentence for a crime *to which a defendant pleaded guilty*. In this case, the mandatory consecutive sentencing relates to a *past* offense for which defendant was on parole and resurrection of the original sentence for that offense, which must be completed before defendant starts serving the sentences on crimes to which he pleaded guilty. See MCL 768.7a(2). Thus, the instant

---

2019-06. We believe that the amendment simply reflected a clarification regarding the true reach of the court rule pursuant to the *Warren* Court's construction of MCR 6.302(B)(2).

circumstances do not fall squarely within the particular parameters of MCR 6.302(B)(2), even, perhaps, as recently amended, which issue we need not and do not resolve.

Defendant's reliance on *In re Guilty Plea Cases*, 395 Mich 96; 235 NW2d 132 (1975), is misplaced. There, the Supreme Court construed the language of GCR 1963, 785.7, which was a predecessor to MCR 6.302, and which expressly required a trial court to advise a defendant " 'that, if the defendant is on probation or parole, the entry of his plea in the present action admits violation of probation or parole, and may subject him to a sentence of imprisonment for the offense under which he was paroled or placed on probation.' " *Guilty Plea Cases*, 395 Mich at 118, quoting GCR 1963, 785.7(1)(c). The Supreme Court noted that the purpose of the provision was "to impart to the defendant that he may be sentenced as a probation or parole violator" and that it did "not require literal or rote compliance." *Id.* at 119. The language in GCR 1963, 785.7(1)(c) did not survive and is not found in MCR 6.302 or anywhere in the Michigan Court Rules of 1985. The opinion in *Guilty Plea Cases* is therefore not instructive to our interpretation of MCR 6.302(B)(2). We also note that GCR 1963, 785.7(1)(c) did not speak to advising a defendant that a potential sentence as a probation or parole violator *would be served consecutively.*

In addition to the mandates of MCR 6.302(B)(2), a plea must be voluntarily and understandingly made for purposes of MCR 6.302(A) and constitutional due process. As briefly touched on earlier, in *Cole*, 491 Mich at 332-334, the Supreme Court explained:

> While we agree that MCR 6.302(B) through (E) constitute explicit requirements imposed on a trial court conducting a plea hearing, the broader directive of MCR 6.302(A) that the plea must be "understanding, voluntary, and accurate" might, in a given proceeding, encompass more than the explicit requirements of the remainder of the court rule. Specifically, the "understanding, voluntary, and accurate" components of subrule (A) are premised on the requirements of constitutional due process, which might not be entirely satisfied by compliance with subrules (B) through (D). . . . .

> A no-contest or a guilty plea constitutes a waiver of several constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. For a plea to constitute an effective waiver of these rights, the Due Process Clause of the Fourteenth Amendment requires that the plea be voluntary and knowing. . . . In *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970), the United States Supreme Court held that waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. In assessing voluntariness, the Court stated that a defendant entering a plea must be fully aware of the direct consequences of the plea.

> Given the difficulty of determining which of the numerous consequences of a conviction are encompassed within the meaning of "direct consequences," a distinction has developed in the post-*Brady* caselaw between "direct" and "collateral" consequences of a plea. See, e.g., *Meyer v Branker*, 506 F3d 358, 367-368 (CA 4, 2007) ("For a guilty plea to be constitutionally valid, a defendant must

be made aware of all the direct, but not the collateral, consequences of his plea."). While courts have relied on different tests to distinguish direct from collateral consequences, the prevailing distinction relied on by a majority of courts turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment. . . . The most obvious direct consequence of a conviction is the penalty to be imposed. It is, therefore, well-recognized that the defendant must be apprised of the sentence that he will be forced to serve as the result of his guilty plea and conviction. [Quotation marks, citations, and brackets omitted; formatting altered.]

A defendant's ignorance of the collateral consequences of a guilty plea does not render the plea involuntary. *People v Fonville*, 291 Mich App 363, 385; 804 NW2d 878 (2011). The *Fonville* panel stated:

> Examples of collateral or incidental consequences include the loss of employment, loss of the right to vote, loss of the right to travel freely abroad, loss of the right to a driver's license, loss of the right to possess firearms, a plea's possible enhancing effects on a subsequent sentence, institution of separate civil proceedings against the defendant for commitment to a mental-health facility, loss of good-time credit, . . . possibility of undesirable discharge from the armed forces, disqualification from public benefits, and loss of business or professional licenses. [*Id.*]

Accordingly, for our purposes, the question becomes whether the requirement that defendant complete his sentence for second-degree murder before beginning the armed robbery sentences—such that the murder and robbery sentences run consecutively—is a *direct* consequence or a *collateral* consequence of his guilty pleas. We conclude that the mandatory consecutive sentencing that resulted was a direct consequence of defendant's pleading guilty to the charges of armed robbery and tampering with a witness: The result constituted a definite, immediate, and automatic effect on the range of defendant's punishment. *Cole*, 491 Mich at 334. Again, MCL 768.7a(2) provides that "[i]f a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense." Having to complete the murder sentence before defendant begins serving the concurrent robbery sentences effectively and necessarily extended the range of his punishment, increasing the minimum amount of time defendant must serve in prison and increasing the maximum amount of time that he may have to serve in confinement. Indeed, the trial court relied in part on the mandatory consecutive sentencing when calculating a period of imprisonment that would not allow for defendant's release until he was elderly.[6]

---

[6] We recognize that some jurisdictions have found that parole-violation implications constitute collateral consequences of a guilty plea. See, e.g., *Sanchez v United States*, 572 F2d 210, 211 (CA 9, 1977) ("We hold that revocation of parole is a collateral rather than a direct consequence of a

Although we have determined that the trial court was required to advise defendant of the mandatory consecutive sentencing at the plea hearing under MCR 6.302(A) and due-process principles, this does not mean that defendant is automatically entitled to postappeal relief under MCR 6.500 *et seq.* We are not addressing a direct appeal, and the additional hurdles put in place by MCR 6.508 must be satisfied. MCR 6.508(D)(3)(a) requires a showing of "good cause" for having failed to raise a particular issue on direct appeal, which mandate can be waived by a court upon determination that there exists a significant possibility that a defendant is innocent of the charged crime. The trial court in this case found that "good cause" was not established because the court was not obligated to advise defendant with respect to mandatory consecutive sentencing tethered to the parole violation. This conclusion essentially confuses "good cause" with the "actual prejudice" requirement of MCR 6.508(D)(3)(b). On remand, the trial court is to determine whether defendant has demonstrated good cause for not having argued in his direct appeal that the trial court erred by failing to advise defendant at the plea proceeding of the mandatory consecutive sentencing.[7] The court may also consider the possibility-of-innocence exception.

Furthermore, with respect to "actual prejudice," we note that MCR 6.508(D)(3)(b)(ii) requires a showing in guilty-plea cases of a "defect in the proceedings . . . that . . . renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand." Our ruling has established that there was a defect in the proceedings, i.e., the failure to advise defendant of the mandatory consecutive sentencing arising from the parole violation, but we remand the case for a determination whether the defect rendered defendant's plea "involuntary" to the degree that it would be "manifestly unjust" to allow the convictions to stand. For example, if there is adequate evidence that defendant was fully aware of the mandatory consecutive sentencing when pleading guilty to the charges despite the court's failure to so advise defendant, it would strain credulity to conclude that the pleas were involuntary or that manifest injustice would occur by allowing the convictions to stand. In other words, actual prejudice could not be established.

Alternatively, MCR 6.508(D)(3)(b)(iii) provides that "actual prejudice" can be demonstrated when an "irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case[.]" We have established that an irregularity occurred in the form of a failure to properly advise defendant of the mandatory consecutive sentencing, but it is for the trial court to assess on

---

defendant's guilty plea."). But we conclude that MCL 768.7a(2)'s definite, immediate, and automatic effect on the range of a defendant's punishment, which occurs upon conviction by plea or otherwise, compels us to hold that mandatory consecutive sentencing connected to a parole violation is a direct consequence of a guilty plea.

[7] The prosecution devotes a great deal of attention in its brief on appeal to its view that "good cause" was not demonstrated. We believe that the trial court, and not this panel, should determine that issue in the first instance, especially considering that the trial court has the authority to expand the record and assess evidentiary materials, including "letters, affidavits, documents, exhibits, and answers under oath to interrogatories propounded by the court[,]" MCR 6.507(A), along with conducting an evidentiary hearing, MCR 6.508(C).

remand whether the irregularity was sufficiently offensive to the maintenance of a sound judicial process irrespective of defendant's guilt or innocence.

Because an appeal of the trial court's decision on remand will likely occur, whether it be by defendant or the prosecutor, and because we wish to prevent the necessity of a potential third appeal, we direct that the trial court address and rule on the issues of "good cause" and "actual prejudice" even if it concludes that ruling on only one of those issues suffices to render a decision on defendant's postappeal motion for relief from judgment. Moreover, for the same reasons and in light of the trial court's failure to address the issue as originally presented, we direct the trial court to rule on defendant's argument that trial counsel was ineffective for failing to advise him of the mandatory consecutive sentencing, and to do so by employing the "good cause" and "actual prejudice" analyses set forth in MCR 6.508(D) and as construed in this opinion.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Deborah A. Servitto